727 P.2d 71

**David P. DILLARD, Petitioner-Appellee,**

v.

**Billye J. DILLARD,
Respondent-Appellant.**

**No. 8693.**

Court of Appeals of New Mexico.

Aug. 28, 1986.

George A. Graham, Jr., Siegenthaler & Graham, Artesia, Sarah M. Singleton, Montgomery & Andrews, P.A., Santa Fe, for petitioner-appellee.

Michael T. Murphy, Rosenberg, Shuler, Murphy & Meyer, Carlsbad, for respondent-appellant.

## OPINION

GARCIA, Judge.

The parties were divorced in July of 1977. They had three minor children at that time, for whom the trial court ordered David Dillard (petitioner) to pay child support to Billye Dillard (respondent). Petitioner, under the original decree was granted "reasonable visitation." Shortly after the divorce, respondent and the children moved to the state of Washington where they had previously resided. Petitioner, in 1978, alleged that respondent was denying him reasonable visitation. Thus began a running battle between the Eddy County and Kittitas County (Washington) courts, each of which issued conflicting orders regarding visitation and child support. Respondent seeks to appeal two orders issued by the Eddy County trial court "modifying" the child support payments of petitioner.

Respondent first seeks to appeal the order of June 1979. This order, resulting from petitioner's motion for child support modification on the grounds that respondent was withholding reasonable visitation, directed petitioner to pay his previously ordered child support into a bank account "until such time as Billye J. Dillard provides reasonable visitation * * * in the State of New Mexico, and at the time she provides reasonable visitation rights the court will make a determination as to whether she is entitled to any of the funds that will be placed in the savings account."

Respondent additionally seeks to appeal a second order entered in June of 1985, which directs that the funds accumulated pursuant to the 1979 order be used to create a trust for the post-minority education of the parties' children. The 1985 order provides that any money left over after the children complete their education, or fail to attend college for more than one year, reverts to petitioner.

## I. PROCEDURAL ISSUES ON 1979 ORDER

Petitioner raises several procedural problems which he maintains prevent this court's consideration of respondent's appeal on the merits. We address the following two concerns:

### Timeliness of Respondent's Appeal

Petitioner contends this court lacks jurisdiction to review the 1979 order, because on all issues, other than how the trust funds should be dispersed, the order was final in 1979. Consequently, petitioner asks this court to rule that any argument as to the 1979 order is not timely. We

view the dispositive questions on appeal as integrally related to the issue of how the trust funds should be dispersed. For that reason, we do not reach the question of whether respondent's appeal is timely as to the 1979 order.

**Respondent's failure to include record of hearing preceding 1979 order**

■ Although we view the dispositive issues as part of respondent's contentions concerning the 1985 order, we note, for the guidance of the bar, the following problem. It is quite clear that it is respondent's duty to see that the record necessary to review alleged errors is before the court. *Three Rivers Land Co. Inc. v. Maddoux*, 98 N.M. 690, 652 P.2d 240 (1982). To the extent that respondent's attempt to challenge the 1979 order is based on a lack of substantial evidence, respondent has failed to provide the necessary record. *Berlint v. Bonn*, 102 N.M. 394, 696 P.2d 482 (Ct.App.1985); *see Luxton v. Luxton*, 98 N.M. 276, 648 P.2d 315 (1982).

■ Respondent further asserts that the trial court's failure to find that respondent was able to adequately support the children before ordering the accumulation of the child support in 1979 was an abuse of discretion. On its face, the 1979 order does not contain such a finding. However, we do not reach the necessity for such a finding because we have no record of any tendered findings or conclusions by respondent either oral or written. Respondent admits that she made no written request for findings and conclusions. In the absence of this record, respondent has waived any objection to the court's findings. *Crownover v. National Farmer's Union Property & Casualty Co.*, 100 N.M. 568, 673 P.2d 1301 (1983); *see also Spingola v. Spingola*, 91 N.M. 737, 580 P.2d 958 (1978) ("It is the duty of the trial court to find all the ultimate facts where a request is seasonably and properly made.") *Id.* at 742, 580 P.2d at 963. Respondent's failure to include the record of the proceedings prior to the 1979 order precludes our review of any part of that order.

**II. COURT'S AUTHORITY TO PROMULGATE 1985 ORDER CREATING TRUST FUND; REINSTATING $200 PER MONTH PAYMENTS TO RESPONDENT FOR YOUNGEST CHILD; PROVIDING FOR REVERSION OF MONIES TO PETITIONER**

Respondent raises two alleged errors in regard to the 1985 order:

(1) to the extent that the 1985 order provides for payment of accumulated child support monies to a trust for use in meeting the children's educational needs past the age of 18, the court exceeded its jurisdiction;

(2) the provision in the 1985 order providing for a reversion of unused funds to petitioner is impermissible.

As a preliminary matter, we deal with petitioner's lack of standing allegations. Petitioner asserts that because respondent is not the parent required by the court to fund the trust created by the 1985 order, she cannot object to the creation of the trust. Petitioner further asserts that because respondent, pursuant to the 1985 order, will receive the same amount of child support for the remaining minor child (commencing November 1, 1984) as was ordered in the original decree, respondent has no basis for objection.

Respondent counters that the trial court's order exceeds that court's jurisdiction under NMSA 1978, Section 40–4–7(C) (Repl.Pamp.1986). As a party to this action, respondent may raise jurisdictional error for the first time on appeal. *See generally Lasley v. Baca*, 95 N.M. 791, 626 P.2d 1288 (1981). Indeed, this court may raise the question of subject matter jurisdiction on its own motion. *State v. Doe*, 91 N.M. 356, 573 P.2d 1211 (Ct.App.1977).

■ To the extent that petitioner's standing argument goes to the question of whether respondent is an aggrieved party, we find that she has a "pecuniary interest" affected by the 1985 order. *See St. Sauver v. New Mexico Peterbilt, Inc.*, 101 N.M. 84, 678 P.2d 712 (Ct.App.1984). We reach this

conclusion by acknowledging the simple fact that since 1979, respondent has supported the parties' children without the benefit of the court-ordered child support. Contrary to petitioner's argument, we do not view the 1979 order as a valid divestment of respondent's pecuniary interest.

■ As to respondent's jurisdictional argument, we cannot agree with petitioner's analysis of the cases where our courts have held that the trial court may not extend child support benefits past the child's attainment of majority. *Psomas v. Psomas,* 99 N.M. 606, 607, 661 P.2d 884 (1982), states, "We agree with husband that the court had no jurisdiction to provide for children who have passed the age of majority." *See also Spingola v. Spingola,* 93 N.M. 598, 603 P.2d 708 (1979); *Phelps v. Phelps,* 85 N.M. 62, 509 P.2d 254 (1973); § 40-4-7. Our determination of the trial court's jurisdiction is controlled by our interpretation of the authority granted by the applicable statute, not by the party asserting a lack of jurisdiction. A general reservation of jurisdiction over the accumulated child support does not permit the trial court to exceed its statutory authority. *See Unser v. Unser,* 86 N.M. 648, 526 P.2d 790 (1974).

Petitioner further maintains that Section 40-4-7(C) provides authority for the trial court's creation of this educational trust. The statute provides:

[I]f any of the property decreed or funds created for the maintenance and education of the children shall remain on hand and be undisposed of at the time the minor children reach the age of majority, the same may be disposed of by the court as it may deem just and proper.

The statutory language encompasses funds that "remain" in the sense of the residuum of funds that have been applied to the children's needs, not funds that the trial court ordered accumulated and which never reached the children ordered to be supported. Petitioner's reliance on this language to somehow extend the court's jurisdiction to the creation of an educational trust after majority is misplaced. *See*

*Spingola v. Spingola* (the subject matter jurisdiction of the court, limited to pre-majority support decrees, cannot be extended by agreement of the parties); *In Re Coe's Estate,* 56 N.M. 578, 247 P.2d 162 (1952).

As a matter of policy, this court does not look favorably upon a six-year accumulation of child support payments at a time when the minor children are most in need of their parents' financial support. *See Mask v. Mask,* 95 N.M. 229, 620 P.2d 883 (1980) (child's needs are current and expectation of future payment does not meet the need).

We hold that the trial court acted beyond its statutory authority in establishing a trust which provided for the parties' children's post-minority education.

## III. SUFFICIENCY OF EVIDENCE

We do not address respondent's sufficiency claim on appeal as to the 1985 order because of our disposition of the jurisdictional issue.

Petitioner claims that respondent waived her right to argue that specific findings were necessary because she failed to file a written request for findings or to tender findings and conclusions. *See* NMSA 1978, Civ.P.R. 52(B)(1)(f) (Repl.Pamp.1980).

■ We agree with petitioner that a failure to make a written request for findings of fact and conclusions of law, generally, precludes petitioner's requested evidentiary review. *Pedigo v. Valley Mobile Homes, Inc.,* 97 N.M. 795, 643 P.2d 1247 (Ct.App. 1982).

We specifically reserve our decision on the issue of whether a written general request, once refused by the trial court, is sufficient to preserve a party's right to claim error in the trial court's refusal to make findings and conclusions. *Cf. McCaffrey v. Steward Const. Co.,* 101 N.M. 51, 678 P.2d 226 (Ct.App.1984) (where the decision contains findings and conclusions signed by the trial judge and the decision is filed in the record proper, this is sufficient to comply with the requirements of Rule 52(B)). *See Peterson v. Peterson,* 98 N.M.

744, 652 P.2d 1195 (1982); *see also Martinez v. Martinez*, 101 N.M. 493, 496, 684 P.2d 1158 (Ct.App.1984) ("Rule 52(B)(1)(h) requires the court to allow counsel a reasonable opportunity to submit requested findings and conclusions.")

The trial court refused respondent's oral request for permission to file findings of fact and conclusions of law. The copy of the clerk's minutes found in the record proper is not signed by the trial court and is not sufficient to meet the requirements of Rule 52(B). *See Balboa Construction Co. v. Golden*, 97 N.M. 299, 639 P.2d 586 (Ct.App.1981). We reiterate the well-settled rule that an appellate court will not review evidence where an appellant fails to make a general request *in writing* or to tender specific findings and conclusions. *See Lovelace Center for the Health Sciences v. Beach*, 93 N.M. 793, 606 P.2d 203 (Ct.App.1980).

We note, again, the importance of preserving error for review on appeal.

**The Reversion Provisions of the 1985 Order**

Our decision on the jurisdictional defect in the trust provision of the 1985 order disposes of that part of the order and requires a remand to the trial court. We discuss respondent's second issue, the impermissibility of the reversion provisions, and conclude that the trial court erred insofar as it provided for a reversion to petitioner of accrued child support.

Respondent claims that to the extent that the 1985 order permitted the accumulated savings account monies to revert back to petitioner, the order impermissibly forgave accrued child support. *See Gomez v. Gomez*, 92 N.M. 310, 587 P.2d 963 (1978), *overruled on other grounds, Montoya v. Montoya*, 95 N.M. 189, 619 P.2d 1233 (1980).

Petitioner argues that the money in the savings account is not accrued child support because, as of the 1979 order, respondent had only a "future, contingent interest" in those monies, not a vested interest. In short, petitioner argues that the savings account monies are "property decreed or

funds created for the maintenance and education of the children [which] remain on hand and * * * [are] undisposed of at the time the minor children reach the age of majority * * * [which] may be disposed of by the court as it may deem just and proper." § 40–4–7(C). This "just and proper" disposition, according to petitioner, was the trial court's creation of the educational trust and the reversion provision, of the 1985 order. We have struck down the trust and now must determine the validity of the reversion provisions of the order.

Our decision turns on the correct characterization of the various monies involved. The final decree of divorce between the parties is dated July 18, 1977. In that decree, petitioner is ordered to pay "to respondent as child support $600 per month * * *."

In June of 1978, the district judge, on petitioner's motion, directed petitioner to pay his child support to the clerk of the district court of Eddy County until further hearings and determinations could be made. This order did not modify any previously decreed child support.

On September 1, 1978, the New Mexico court (in accord with an order obtained by respondent in Washington state) ordered future child support payments to be made to the Clerk of the Kittitas County, Washington court and ordered the Eddy County Clerk to remit all past payments received by the Clerk to Kittitas County for credit to respondent. The effect of this order was to release the child support payments accumulated in the Eddy County Clerk's Office and to resume petitioner's regular payments of child support, albeit, through the Kittitas County Clerk's Office. Thus far, no modification of the child support obligation mandated by the original decree had occurred.

On June 25, 1979, after a hearing pursuant to petitioner's petition to modify support, the trial court found that respondent's Washington order modifying visitation was not reasonable, and that respondent had failed to provide reasonable visita-

tion. The court held respondent in contempt for her failure to provide reasonable visitation. The court additionally ordered petitioner to pay the two hundred dollars per month for the two minor children into a savings account until such time as respondent provided reasonable visitation, "and at the time she provides reasonable visitation rights the Court will make a determination as to whether she is entitled to any of the funds that will be placed in the savings account."

Clearly, no modification of the decreed child support occurred before June 1979, despite the fact that the trial court had ordered the child support paid to two different court clerks in lieu of payment to respondent. *See Gomez v. Gomez* (father is responsible for child support payments until petition for modification properly brought before court and court finds sufficient change in circumstances to modify *future* payments); *see also* § 40–4–7(C).

■ The ultimate question, then, is whether petitioner is correct in his assertion that the 1979 order effectively modified his support obligation. To warrant a modification in an award of child support, the court must find a "substantial change of circumstances which materially affects the existing welfare of the child and which must have occurred since the prior adjudication where child support was originally awarded." *Henderson v. Lekvold,* 95 N.M. 288, 291, 621 P.2d 505, 508 (1980). No such finding or any language that approximates such a finding appears in the 1979 order.

Generally, court-ordered modification of child support is concerned with a petitioned-for decrease or increase in child support payments. *See Smith v. Smith,* 98 N.M. 468, 649 P.2d 1381 (1982); *Peterson v. Peterson; Henderson v. Lekvold; Romero v. Romero,* 101 N.M. 345, 682 P.2d 201 (Ct.App.1984). This is not the case here. Rather, petitioner asked the court to use child support as a punitive device to require respondent to provide reasonable visitation. *Cf. Fullen v. Fullen,* 21 N.M. 212, 153 P. 294 (1915) (where court found children in need of father's support, and placed prop-

erty in trust for this purpose; decree prevented proceeds from becoming available for support until mother returned children to New Mexico).

■ Just as using reduction in child support payments as a punitive measure is not favored, unless it can be demonstrated that the reduction is in the overall best interests of the children, withholding child support payments to force visitation must similarly be disfavored. *See Fullen v. Fullen.* The public policy of this state provides that child support exists to benefit the children. *Barela v. Barela,* 91 N.M. 686, 579 P.2d 1253 (1978). Only in extreme circumstances should courts authorize the withholding of child support to coerce visitation.

Finally, we note that the trial court's 1979 order held respondent in contempt for her failure to provide reasonable visitation. We note that civil contempt may issue when respondent has disobeyed an order of the court. The punishment is remedial, designed to coerce respondent to perform the act ordered by the court. *State v. Pothier,* 104 N.M. 363, 721 P.2d 1294 (1986).

The coercive nature of the contempt citation is a future indication that the 1979 order was another in a series of orders designed to procure reasonable visitation for petitioner.

■ In light of the considerations and standards necessary for a modification of child support, we do not believe, nor does the 1979 order anywhere state, that petitioner's child support responsibility was modified by that order. *Cf. Barela v. Barela* (only after finding that custodial parent is financially able to support minor child does the court have the power to terminate future support obligations of the non-custodial parent). *See also Brannock v. Brannock,* 104 N.M. 385, 722 P.2d 636 (1986). We must conclude that the monies accumulated in the savings account prior to 1983 are most correctly characterized as accrued child support.

Thus, the 1985 order, insofar as it attempts to order any new disposition of mo-

nies accumulated prior to July 1983 (date of petition to reconsider child support or modification, *see Montoya v. Montoya* ) is beyond the authority of the trial court. *Britton v. Britton,* 100 N.M. 424, 671 P.2d 1135 (1983); *Gomez v. Gomez; Romero v. Romero.*

We have determined that the 1979 order did not modify petitioner's original child support obligation, that the trust provision of the 1985 order is invalid, and that the court had no authority to order a new disposition (inconsistent with the 1977 divorce decree) of child support monies accrued prior to July 1983. We reverse and remand to the trial court for proceedings consistent with this opinion.

Respondent shall be awarded her appellate costs.

IT IS SO ORDERED.

ALARID and MINZNER, JJ., concur.